# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-016**

**Filing Date: January 19, 2021**

**No. A-1-CA-37353**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**CARLOS J. VILLANUEVA a/k/a
CARLOS MCMAHON,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Geraldine E. Rivera, District Judge**

Certiorari Denied, March 31, 2021, No. S-1-SC-38679. Released for Publication June 29, 2021.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John C. Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**YOHALEM, Judge.**

**{1}** Defendant Carlos Villanueva appeals his conviction for criminal contempt, in violation of NMSA 1978, Section 34-1-2 (1851) and Rule 1-093(B)(1) NMRA. Defendant contends that: (1) there was insufficient evidence to support his conviction; (2) the jury instructions were unconstitutionally vague and overbroad; (3) fundamental error in the jury instructions requires reversal; (4) the district court erroneously excluded from evidence a recording of Defendant's encounter with the judge; and (5) the State failed to

obtain an order appointing the district attorney to prosecute the case. We reject each of Defendant's contentions and affirm his conviction.

**BACKGROUND**

**{2}**     Defendant was convicted of criminal contempt for his conduct on or about April 3, 2017. On that date, Defendant made several attempts to contact the district court judge presiding over a child support case pending in the Thirteenth Judicial District Court for the purpose of influencing the judge to recuse himself. Defendant's efforts culminated in a confrontation with the judge outside a local restaurant where Defendant attempted to convince the judge to withdraw from the case.

**{3}**     Defendant had contacted the Thirteenth Judicial District Court clerk's office the week before April 3, 2017, to request documents from the case file in a pending child support case. Defendant spoke on the phone with Pablita Cohoe, a clerk, and identified himself as a private investigator.

**{4}**     The following week, on April 3, 2017, Defendant came into the district court clerk's office to speak to Cohoe. Cohoe testified that Defendant objected to the court noting his name in the file. She told him it was the practice of the court to note the name of anyone who reviewed a file. He then asked to speak to Judge Pedro Rael, the judge assigned to the pending child support case. Cohoe told Defendant that he would have to file a motion and request a hearing.

**{5}**     Shortly after Defendant left the clerk's office, a court security officer, Mike Hawkins, observed Defendant knocking on a door marked "no entry" that leads to Judge Rael's chambers. Matthew MacEachen, administrative assistant to Judge Rael, testified that Defendant came to Judge Rael's door with another man asking to speak to Judge Rael about a pending case. MacEachen told Defendant that Judge Rael could not discuss a case without all parties present. Defendant then told MacEachen that he was an "old friend" of Judge Rael.

**{6}**     Judge Rael did not recognize Defendant's name. He told MacEachen to tell Defendant to file a motion. MacEachen testified that he told Defendant that the proper way to contact Judge Rael is to call or email MacEachen explaining who he is, what he wants from a proposed meeting, and how much of Judge Rael's time he would need. MacEachen also testified that Defendant called Judge Rael's office about the pending child support case on two occasions, though he could not recall if the calls were before or after their April 3, 2017, encounter at the court. Each time Defendant called, the caller ID read "Diane Levario." Levario was a party to the pending child support case.

**{7}**     Around noon on April 3, 2017, Judge Rael drove from the courthouse to a restaurant to meet a friend for lunch. The restaurant was four to six miles from the courthouse; the drive took ten to fifteen minutes. When Judge Rael arrived at the restaurant, he saw three men he did not recognize walking rapidly toward him. Two of the men blocked the door to the restaurant so that Judge Rael "would have to push one

of them over if [he] was going to keep going through the restaurant door." The third man shook Judge Rael's hand and identified himself as Defendant. Defendant then told Judge Rael that he needed to recuse himself from the pending child support case involving Levario because Defendant had information showing Judge Rael was personally acquainted with the parties. Judge Rael testified that he told Defendant "I don't know what you're talking about," to which Defendant replied, "I have pictures of you with the parties." Defendant then started flipping through photos on his cell phone, putting the phone "very close" to Judge Rael's face. Judge Rael told Defendant that he did not see himself in the photographs. Without informing Judge Rael, Defendant was making an audio recording of the interaction on his phone. Judge Rael told Defendant, "You have to file a motion," and pushed past the two men into the restaurant. Defendant and the two men with him left after Judge Rael entered the restaurant.

{8}     Judge Rael testified that his "state of concern was extremely high" by the end of the interaction. He felt certain that Defendant and the other men followed him from the courthouse to the restaurant. He testified that the route from the court to the restaurant is "not easy to follow, unless you know how to get there."

{9}     That afternoon, after the encounter at the restaurant, Defendant telephoned the courthouse, asking to speak to Judge Rael. Judge Rael instructed the courthouse staff to tell Defendant not to call anymore. Judge Rael also entered an order to show cause why Defendant should not be held in contempt. Following a hearing, at which Defendant appeared and testified, Judge Rael turned the matter over to the district attorney to determine whether to bring criminal contempt charges against Defendant. The district attorney charged Defendant with contemptuous conduct in violation of Section 34-1-2 and Rule 1-093(B)(1).[1] Following a jury trial, Defendant was convicted of criminal contempt, pursuant to Section 34-1-2.

## I.      Defendant's Conviction of Criminal Contempt Is Supported by Substantial Evidence

{10}     Defendant first argues that the State's evidence was insufficient to support a conviction for criminal contempt, pursuant to Section 34-1-2 and Rule 1-093(B)(1). We disagree.

## A.      Standard of Review

{11}     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In doing so, the

---

[1]NMSA 1978, Section 34-1-4 (1965) was included in the amended criminal complaint, but was not presented to the jury as a charge count.

Court "should not re-weigh the evidence to determine if there was another hypothesis that would support innocence." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. The relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted).

## B.    Sufficiency of the Evidence

{12}    In this case, the jury was instructed that to enter a verdict of guilty of criminal contempt, the State must prove beyond a reasonable doubt each of the following elements of the crime: (1) "[D]efendant engaged in contemptuous conduct[,]" and (2) the conduct "happened in New Mexico on or about the 3rd day of April, 2017." The jury was also given a definitional instruction defining "contempt" or "contemptuous conduct" taken verbatim from Rule 1-093(B)(1), as follows:

"Contempt" or "contemptuous conduct" includes but is not limited to,

(a)    disorderly conduct, insolent behavior, or a breach of peace, noise, or other disturbance, if such behavior actually obstructs or hinders the administration of justice or tends to diminish the court's authority,

(b)    misconduct of court officers in official transactions, or

(c)    disobedience of any lawful order, rule, or process of the court.

"Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

{13}    Defendant argues first that the evidence in the record was insufficient to establish that he engaged in "disorderly conduct, insolent behavior, or a breach of [the] peace, noise, or other disturbance" required to convict of contempt, pursuant to Rule 1-093(B)(1)(a) of the definitional instruction. He points to the absence of evidence showing that his conduct created a physical disturbance, posed a threat to the judge or court personnel, disrupted courtroom proceedings, or disturbed the peace. Defendant's argument assumes, without citation to authority, that either a use of force, a physical threat, or a disturbance directly interfering with proceedings in the courtroom is required to convict of contempt. We do not agree that the jury instruction limited contempt to these types of behavior.

{14}    The jury instruction defining contempt provides that, in addition to disorderly conduct, or a breach of the peace, noise or other disturbance, "insolent behavior" is sufficient to convict of contempt providing that "such behavior actually obstructs or hinders the administration of justice or tends to diminish the court's authority." In

construing a jury instruction, we look to the meaning a reasonable juror would have attributed to the words. *See State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633. We often use dictionary definitions for guidance when determining "the plain meaning of the words at issue[.]" *State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830 (recognizing that "our courts interpret the intended meaning of statutory and other language by consulting the dictionary to ascertain the words' ordinary meaning"). "Insolent" behavior is defined by the *Merriam-Webster Dictionary* as behavior which is "overbearing," "impudent," or which "exhibit[s] boldness or effrontery." *Insolent*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/insolent (last visited on January 8, 2021). Defendant's persistence in pursuing a face-to-face meeting with Judge Rael, even after being told that he must telephone for an appointment or file a motion; Defendant's lying about being an "old friend" of Judge Rael as a way to gain access to Judge Rael; Defendant's pursuing Judge Rael to a restaurant, a ten or fifteen minute drive from the courthouse, accosting Judge Rael, blocking his entrance to the restaurant, and demanding that Judge Rael recuse himself from a pending case; Defendant thrusting a cell phone in Judge Rael's face is behavior that is the very essence of overbearing and impudent, and which is characterized by "boldness or effrontery."

{15} The fact that Defendant introduced evidence contradicting some of the State's evidence describing his conduct does not require reversal. It is well settled that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [a d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M 438, 971 P.2d 829. We conclude that "a rational jury *could* have found beyond a reasonable doubt" based on the evidence summarized above that Defendant engaged in "insolent behavior." *Id.* (internal quotation marks and citation omitted).

{16} Defendant also argues that the evidence in the record was insufficient to establish that his behavior "actually obstruct[ed] or hinder[ed] the administration of justice or tend[ed] to diminish the court's authority[,]" a requirement to convict of contempt, pursuant to Rule 1-093(B)(1)(a), the definitional instruction given to the jury. Defendant again claims that because he neither overtly threatened Judge Rael with physical harm, spoke to Judge Rael in a loud or threatening tone, nor created a disturbance in the courtroom, the jury could not find that Defendant's behavior "actually obstruct[ed] or hinder[ed] the administration of justice or tend[ed] to diminish the court's authority." *Id.* We again disagree.

{17} Defendant's argument misconstrues the nature of criminal contempt. The focus of criminal contempt as defined by the jury instruction is properly on whether a defendant's conduct has interfered with or obstructed the work of the court, not whether a defendant's conduct has been personally offensive to an individual judge. *See State v. Magee Publ'g Co.*, 1924-NMSC-023, ¶ 39, 29 N. M. 455, 224 P. 1028, *overruled in part on other grounds by State v. Morris*, 1965-NMSC-113, ¶ 20, 75 N.M. 475, 406 P.2d 349. The administration of justice is hindered and the court's authority diminished when outside influence is exerted on a judge, juror, or witness. "The theory of our system is

that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence[.]" *Patterson v. Colorado, ex rel. Att'y Gen. of Colo.*, 205 U.S. 454, 462 (1907). Personally approaching a judge outside the courtroom and urging him or her to proceed in a certain way in a pending case, even in a soft-spoken, non-threatening tone, is contemptuous conduct that hinders or obstructs the administration of justice and diminishes the integrity of our courts. *Bridges v. California*, 314 U.S. 252, 282 (1941) (Frankfurter, J., dissenting) (stating that the administration of justice by an impartial judiciary, free from outside influence "has been basic to our conception of freedom ever since Magna Carta"); *State v. Kayser*, 1919-NMSC-019, ¶ 14, 25 N.M. 245, 181 P. 278 (stating that "[i]t is the interference with [a] witness and the attempt to influence him, as to the testimony he will or will not give, that constitutes the offense"), *overruled in part on other grounds by Morris*, 1965-NMSC-113, ¶¶ 20-21.

**{18}**   The undisputed evidence in this case shows that Defendant attempted to influence or coerce a sitting judge to recuse himself from a pending case. The evidence that Defendant exerted outside influence on a pending case is sufficient for the jury to find, beyond a reasonable doubt, that Defendant's behavior "actually obstruct[ed] or hinder[ed] the administration of justice or tend[ed] to diminish the court's authority[.]" *See* Rule 1-093(B)(1)(a).

**{19}**   We conclude that Defendant's conviction of criminal contempt is supported by substantial evidence in the record.

## II.   The Contempt Statute and Court Rule Are Neither Vague nor Overbroad

**{20}**   Defendant next argues that Section 34-1-2 and Rule 1-093(B)(1), defining the terms "contempt" and "contemptuous conduct" in the context of a civil proceeding, are unconstitutionally vague, or, in the alternative, unconstitutionally overbroad.

**{21}**   Under the Due Process Clause of the United States Constitution, vagueness can render a statute unconstitutional. A criminal statute is unconstitutionally vague if it "does not allow individuals of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited." *State v. Ebert*, 2011-NMCA-098, ¶ 20, 150 N.M. 576, 263 P.3d 918 (internal quotation marks and citation omitted). "Vagueness also exists when the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages *ad hoc* application." *Id.* (omission, internal quotation marks, and citation omitted). "Because the essence of a vagueness claim rests on a lack of notice, a party may not succeed on the claim if the statute clearly applies to the defendant's conduct." *Id.* (internal quotation marks and citation omitted).

**{22}**   The constitutional doctrine of overbreadth, "serves to invalidate a statute only when it sweeps so broadly to impinge unnecessarily on conduct protected by the First and Fourteenth Amendments." *Santillanes v. State*, 1993-NMSC-012, ¶ 23, 115 N.M.

215, 849 P.2d 358. Unlike a vagueness challenge, which is limited to the particular facts of the defendant's case, "a defendant may make an overbreadth challenge based on the First Amendment even if the statute is constitutional as applied to him." *Ebert*, 2011-NMCA-098, ¶ 6. "Statutes enjoy a strong presumption of constitutionality, and the burden is on the challenger to prove a statute unconstitutional beyond a reasonable doubt." *Id.*

**{23}** Both Defendant's void for vagueness and overbreadth claim focus on the introductory phrase of Rule 1-093(B)(1). The introductory phrase of Rule 1-093(B)(1) leaves open the possibility that other types of conduct beyond those described in Subsections (1)(a)-(c) of the Rule could be contemptuous. The rule's definition of contempt begins as follows: " 'Contempt' or 'contemptuous conduct' includes but is not limited to . . . ." That phrase is followed by a list of three types of conduct: (a) conduct which obstructs or hinders the administration of justice; (b) misconduct by court officers; and (c) disobedience of court order, rule, or process. Rule 1-093(B)(1)(a)-(c).

**{24}** Defendant argues that leaving the definition of "[c]ontempt" open-ended makes it impossible for individuals of ordinary intelligence to know what conduct will constitute contempt and, therefore, the rule is void for vagueness. Defendant claims as well that the open-ended phrasing sweeps too broadly, encompassing speech protected by the First Amendment.

**{25}** Defendant cannot succeed on his void for vagueness claim because the definition of "[c]ontempt" in Subsection (1)(a) of the definition clearly applies to Defendant's conduct. *Ebert*, 2011-NMCA-098, ¶ 20. Rule 1-093(B)(1) plainly gives notice that an extra-judicial attempt to influence, convince, or coerce a judge to recuse himself from a pending case, the conduct engaged in by Defendant, is criminal contempt. This is not a situation where persons of common intelligence must guess at the meaning of criminal contempt. *See Ebert*, 2011-NMCA-098, ¶ 20.

**{26}** Defendant's overbreadth claim, unlike his void for vagueness claim, need not be limited to the facts of his case. A defendant is permitted to argue that the statutory elements of a crime as applied to circumstances different from his own impinge on rights protected by the First Amendment. *See State v. Garcia*, 2013-NMCA-005, ¶ 23, 294 P.3d 1256. Defendant claims that the criminal contempt statute, Section 34-1-2, would allow a conviction of contempt for public speech or for written publications that are protected by the First Amendment. Defendant's argument fails because the contempt statute, Section 34-1-2, expressly incorporates the common law of contempt. Section 34-1-2 states that the power of contempt is to be applied as "circumscribed by the usage of the courts of the United States." The common law of contempt addresses at length the intersection of the First Amendment and the constitutional interest in protecting the integrity of our judicial system so as to ensure that both constitutional interests are protected in contempt proceedings involving public speech. *See, e.g., Morris*, 1965-NMSC-113, ¶¶ 15-20; *Bridges*, 314 U.S. at 271. Because Section 34-1-2 acknowledges and incorporates the common law of contempt, it does not unnecessarily impinge on conduct protected by the First Amendment and is not overbroad.

## III. There Was No Fundamental Error in Instructing the Jury

**{27}** Defendant next challenges the jury instructions given by the district court, claiming, for the first time on appeal, that the instruction defining the terms "contempt" or "contemptuous conduct" confused or misdirected the jury, resulting in a miscarriage of justice.

### A. Standard of Review

**{28}** "The standard of review we apply to jury instructions depends on whether the error has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted). Because Defendant failed to object to the instructions, we review for fundamental error. *Barber*, 2004-NMSC-019, ¶ 8.

**{29}** When our review is for fundamental error, we first look to whether the instruction confused or misdirected the jury. *See Benally*, 2001-NMSC-033, ¶ 12. If we find that the jury was confused or misdirected, we then continue our analysis to determine whether the error so undermined the reliability of the conviction or prejudiced the defendant's rights that it would "shock the conscience" to allow the conviction to stand. *Barber*, 2004-NMSC-019, ¶¶ 8, 14 ("The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice."). We will not uphold a conviction "if an error implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* ¶ 18 (internal quotation marks and citation omitted).

### B. The Definitional Instruction

**{30}** Defendant's challenge to the jury instructions focuses on the introductory phrase in the definition of "contempt" or "contemptuous conduct" given to the jury. Defendant claims, for the first time on appeal, that the phrase "includes but is not limited to" is likely to have confused or misled a reasonable juror, resulting in a miscarriage of justice. Defendant claims that "the jury may have found that literally anything constitutes contempt."

**{31}** We do not agree that this introductory phrase, acknowledging that there are other types of conduct that also constitute contempt, confused the jury. Immediately following the introductory phrase, the jury was given a definition of "contempt" and "contemptuous conduct," which was directly applicable to Defendant's conduct. Any confusion created by the introductory phrase was immediately clarified by the giving of a directly applicable definition. *State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M. 39, 878 P.2d 988 ("[I]f a jury instruction is capable of more than one interpretation, then the court must next evaluate whether another part of the jury instructions satisfactorily cures the ambiguity."). The jury thus received an accurate rendition of the relevant law the jurors were to apply. There was neither an omission nor a misstatement of the law. *State v.*

*Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306 ("Juror confusion or misdirection may stem from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." (internal quotation marks and citation omitted)). As the United States Supreme Court noted in *Griffin v. United States*, jurors are capable of evaluating the facts, and where they are instructed on a ground for conviction that is supported by adequate evidence in the record, appellate courts will not presume "that the jury convicted on a ground that was not supported by adequate evidence." 502 U.S. 46, 59-60 (1991) (internal quotation marks and citation omitted). We, therefore, conclude that the instruction was not likely to confuse or misdirect the jury.

**{32}** In any event, because the record developed at trial establishes Defendant's guilt pursuant to the Rule 1-093(B)(1) definitional instruction beyond a reasonable doubt, and there was no mistake in the process that makes his conviction fundamentally unfair, we hold that there was no fundamental error and reversal is not required.

## IV. The District Court Did Not Abuse Its Discretion in Excluding Defendant's Cell Phone Recording

**{33}** Defendant argues that the district court abused its discretion in excluding from evidence a tape recording of Defendant's conversation with Judge Rael taken from Defendant's cell phone. Defendant contends, first, that the district court erred as a matter of law in excluding the recording because the voices on the recording were not properly authenticated, pursuant to Rule 11-901 NMRA. The record shows that the district court did not question the authenticity of the recording. The court excluded the recording solely because the voices were not understandable due to the poor quality of the recording and background noise. The court explained that the recording was being excluded because:

> THE COURT: I don't understand it. There is too much static for me from the wind or traffic. . . . [T]here's just too much interference for it to be reliable.

**{34}** Defendant next claims that the district court erred in excluding the recording even if the words were inaudible because it was nonetheless relevant support for Defendant's claim that he had not raised his voice or used a threatening tone in speaking to Judge Rael. Defendant argues that the court's decision erroneously cut off this potential line of defense.

**{35}** Appellate courts "review the district court's decision to admit or exclude evidence for an abuse of discretion." *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted).

**{36}** Rule 11-403 NMRA gives the district court authority to exclude relevant evidence under certain circumstances. Rule 11-403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**{37}** Under this rule, the district court must weigh the evidence to determine whether its "probative value is outweighed by its prejudicial effect." *State v. Martinez*, 1980-NMCA-022, ¶ 6, 94 N.M. 50, 607 P.2d 137. The rule recognizes that evidence that wastes the jury's time, is cumulative of other evidence, or is confusing or misleading can be excluded by the court as lacking in probative value. Rule 11-403. If "there were alternative means of establishing the same fact" then the probative value of the excluded evidence is minimized. *Martinez*, 1980-NMCA-022, ¶ 6.

**{38}** Although our appellate courts have not adopted a specific standard that justifies the exclusion of authenticated recordings based on their audibility, federal courts which have considered this question have generally agreed that exclusion is justified where substantial portions of the recording are inaudible or incomprehensible. *See United States v. Carbone*, 798 F.2d 21, 24 (1st Cir. 1986) (adopting the generally accepted rule that "where a tape recording is challenged on the grounds of audibility the question is whether the inaudible parts are so substantial as to make the rest more misleading than helpful" (internal quotation marks and citation omitted)). Whether that standard is met is left to the discretion of the trial court. *Id.*

**{39}** In this case, the court determined that the jury would not be able to understand any of the recording because of the level of static and background noise. In deciding to exclude the recording, the court considered and rejected Defendant's claim that the exclusion prejudiced Defendant's defense. The court noted that Defendant could address the content and tone of the conversation through two witnesses to the conversation who testified at trial, Judge Rael and Defendant's companion. Defendant was thus able to establish both the content and tone of the conversation by alternative means, greatly diminishing both the probative value of the recording and any prejudice which might otherwise have arisen from its exclusion.

**{40}** Because the probative value of the recording was outweighed by the dangers of confusing the jury and wasting valuable time, and because the evidence would have been cumulative of the witnesses' testimony, we hold that the court did not abuse its discretion in excluding the recording.

**V.    Defendant's Claim That the District Attorney Was Not Properly Appointed Lacks Merit**

**{41}** Defendant argues that the district court lacked jurisdiction because the record does not reflect that the district court appointed the district attorney to prosecute the case, as required by Rule 1-093(D)(2). We disagree.

**{42}** Rule 1-093(D)(2) provides that "[t]he court shall appoint the district attorney to prosecute the criminal contempt for the state." *See also* NMSA 1978, § 36-1-18(A)(1) (2001) ("Each district attorney shall . . . prosecute . . . for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested[.]"). We interpret our Supreme Court's rules of procedure by seeking to determine the underlying intent of the enacting authority. *See Roark v. Farmers Grp., Inc.*, 2007-NMCA-074, ¶ 50, 142 N.M. 59, 162 P.3d 896 ("We apply the same rules to the construction of Supreme Court rules of procedure as we apply to statutes." (internal quotation marks and citation omitted)).

**{43}** Indirect contempt charges can result in a criminal conviction with serious consequences for the defendant. Our Supreme Court has required that the due process protections provided to other criminal defendants apply in a nonsummary indirect contempt prosecution. *Concha v. Sanchez*, 2011-NMSC-031, ¶ 40, 150 N.M. 268, 258 P.3d 1060 (listing criminal due process protections required in a nonsummary criminal contempt proceeding). The purpose of the Supreme Court's requirement for appointment of the district attorney to prosecute criminal contempt is part of the Court's effort to ensure that due process is provided. Prosecution by an independent, disinterested prosecutor protects the defendant's right to a fair trial. Rule 1-093 comm. cmt.

**{44}** There is no indication that our Supreme Court intended that there be a special method used to appoint the district attorney. We find no merit to Defendant's claim that the district court was required to enter a written order. Rule 1-093 adopts the Court's Rules of Criminal Procedure for cases of nonsummary indirect criminal contempt. Rule 1-093(D)(3). Rule 5-201(B) NMRA provides that the district attorney may commence a criminal prosecution by filing a criminal complaint. The district attorney filed such a complaint in this case and then proceeded to prosecute the case at trial. Judge Rael neither presided nor served as the prosecutor, in full compliance with Rule 1-093(D)(2), the Rules of Criminal Procedure, and the requirements of due process.

**{45}** The purpose of Rule 1-093(D)(2)—to provide an independent prosecutor in a criminal contempt proceeding—was fully achieved. Defendant's claim that Rule 1-093(D)(2) was violated lacks merit.

**CONCLUSION**

**{46}** For the reasons stated above, we affirm Defendant's conviction for criminal contempt.

**{47}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**