IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-026

Filing Date: December 28, 2022

No. A-1-CA-39340

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

PHILLIP B. SALAZAR,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Fred Van Soelen, District Judge

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

ATTREP, Judge.

{1}     Defendant Phillip Salazar appeals his conviction for kidnapping in the first degree (NMSA 1978, § 30-4-1 (2003)), claiming the district court made several evidentiary errors at trial. We conclude that the district court committed reversible error by preventing Defendant from impeaching the complaining witness with a prior omission inconsistent with her testimony at trial about her failure to disclose, during the investigation of the allegations against Defendant, the full extent of her relationship with Defendant. Because we remand for a new trial on this ground, we do not address Defendant's other claims of error.

**BACKGROUND**

**{2}**     Defendant was tried for kidnapping in the first degree, two counts of criminal sexual penetration in the second degree, and aggravated burglary. The complaining witness, Tammie Chavez, accused Defendant of sneaking into her apartment, tackling her to the ground, repeatedly hitting her, sexually assaulting her, and preventing her for nearly four hours from getting help or leaving her apartment. Defendant and Chavez had dated for about one year before the alleged attack. Although Defendant and Chavez disputed whether they were still dating when the incident occurred, they both testified that they had consensual sex the day before.

**{3}**     When reporting the alleged attack to law enforcement and when discussing the alleged attack with emergency room personnel on the day of the incident, Chavez did not disclose that Defendant had sexually assaulted her. The day after the incident, Chavez went to the police department because she believed that the charges initially filed against Defendant were not serious enough and that a stalking charge was more appropriate. During that visit, Chavez alleged for the first time that Defendant had sexually assaulted her. According to a proffer by Defendant's counsel at trial, Chavez did not disclose at the time that she had been in an ongoing, consensual sexual relationship with Defendant ending the day before the alleged attack. Chavez was examined by a sexual assault nurse examiner (SANE), who recorded that Chavez described Defendant as an "ex-intimate partner." According to the trial proffer, Chavez did not disclose to the SANE that she recently had been in a sexual relationship with Defendant or that, the day before the incident, she had engaged in consensual sex with Defendant. Also according to the trial proffer, it was not until some months after the incident, when DNA results were returned, that Chavez first disclosed that she and Defendant had been in a consensual sexual relationship around the time of the incident.

**{4}**     On cross-examination, defense counsel questioned Chavez about her delay in reporting the alleged sexual assault. Defense counsel also attempted to impeach Chavez's credibility by asking about her failure to disclose to law enforcement and medical personnel her ongoing, consensual sexual relationship with Defendant. The State objected on relevancy grounds. Defense counsel argued that Chavez's omission amounted to a prior inconsistent statement and therefore was relevant to impeach her credibility. The district court judge stated that he was "not sure [Chavez's] credibility is material to the case" and then sustained the State's objection, deciding, sua sponte, that the line of questioning violated New Mexico's rape shield statute.

**{5}**     At the close of the State's case, the State dismissed the aggravated burglary charge. Defendant testified in his own defense. He admitted hitting Chavez, but denied sneaking into her apartment, restraining her, and sexually assaulting her. The jury found Defendant guilty of kidnapping in the first degree, but acquitted him of both counts of criminal sexual penetration.

**DISCUSSION**

**{6}**     We first address whether it was error for the district court to limit the cross-examination of Chavez under New Mexico's rape shield statute. Concluding that it was, we next consider whether affirmance is nonetheless appropriate on other grounds. Because it is not, we finally examine whether the district court's error was harmful, such that reversal is required.

## I.     The District Court's Reliance on the Rape Shield Statute Was Erroneous

**{7}**     Defendant argues, and the State concedes, the district court erroneously ruled that Defendant's cross-examination of Chavez about her failure to disclose to law enforcement and medical personnel her ongoing, consensual sexual relationship with Defendant was prohibited by New Mexico's rape shield statute, NMSA 1978, § 30-9-16(A) (1993). *See also* Rule 11-412 NMRA (corresponding rule of evidence). While we are not required to accept the State's concession, *see State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we agree with the parties.

**{8}**     Generally, we review a district court's evidentiary decision, such as this one, for an abuse of discretion. *State v. Patterson*, 2017-NMCA-045, ¶ 6, 395 P.3d 543. A district court abuses its discretion if its ruling is "based on a misapprehension of the law," *State v. Jaramillo*, 2012-NMCA-029, ¶ 17, 272 P.3d 682, or is "clearly untenable or not justified by reason," *State v. Layne*, 2008-NMCA-103, ¶ 6, 144 N.M. 574, 189 P.3d 707 (internal quotation marks and citation omitted). We "review de novo whether the district court applied the correct evidentiary rule." *State v. Astorga*, 2015-NMSC-007, ¶ 29, 343 P.3d 1245.

**{9}**     "Rape-shield laws, as they are popularly known, reversed the long-standing common-law doctrine that permitted a defendant accused of rape to inquire into the complainant's 'character for unchastity,' that is, [the complainant's] propensity to engage in consensual sexual relations outside of marriage." *State v. Johnson*, 1997-NMSC-036, ¶ 11, 123 N.M. 640, 944 P.2d 869 (internal quotation marks and citation omitted). "To encourage victims to report incidents of sexual assault, states enacted rape shield laws to protect victims from unnecessary intrusions into their past sexual history, because states recognized that such evidence is usually only marginally relevant." *State v. Montoya*, 2014-NMSC-032, ¶ 42, 333 P.3d 935. New Mexico's rape shield statute thereby prevents the admission of evidence of a victim's past sexual conduct "unless . . . the evidence is material to the case and . . . its inflammatory or prejudicial nature does not outweigh its probative value." Section 30-9-16(A); *see also* Rule 11-412(B) (same). The statute "serves to emphasize the general irrelevance of a victim's sexual history, not to remove relevant evidence from the jury's consideration." *Johnson*, 1997-NMSC-036, ¶ 21 (internal quotation marks and citation omitted). "If a defendant makes . . . a [sufficient] showing [of relevance], the [district] court must then weigh the probative value of that evidence against the danger of unfair prejudice to the victim." *Montoya*, 2014-NMSC-032, ¶ 29.

**{10}**     We agree with the parties that the rape shield statute was not implicated by the evidence Defendant attempted to elicit from Chavez. As Defendant observes, "defense

counsel's questions were not about [Chavez's] sexual conduct or reputation for past sexual conduct; they were about her initial lack of candor to the authorities about the nature of her relationship with [Defendant]." That is, Defendant's cross-examination was designed to impeach Chavez's credibility for truthfulness, not to establish her propensity to have consensual sex with him or for some other purpose generally prohibited by the rape shield statute. *See id.* ¶¶ 41-45 (noting that the "underlying concerns targeted by rape shield laws . . . do not appear to be prominent in this case," in part because the evidence of the defendant's prior sexual relationship with the complainant was offered to "present a complete defense" and not to establish propensity); *see also Johnson*, 1997-NMSC-036, ¶¶ 11-12 (explaining that rape shield statutes generally were adopted to "address the problem of underreporting and reluctance to testify" in rape cases by prohibiting the use of a complainant's past sexual history to establish their "propensity to engage in consensual sexual relations" (internal quotation marks and citation omitted)).

{11}    But even if this line of questioning somehow implicated the rape shield statute, it was confined to Chavez's sexual relationship with Defendant—a relationship she already had testified to at trial during her direct examination. In other words, Defendant "did not seek to delve unduly into the details of their sexual encounters, embarrass or harass [Chavez], elicit testimony regarding [her] sexual conduct with others, or discredit her character," based on "evidence of unchastity." *See Montoya*, 2014-NMSC-032, ¶¶ 42-43 (internal quotation marks and citation omitted). We agree with the State, then, that "another question" mentioning Defendant and Chavez's sexual relationship "could not be inadmissible under [the rape shield] statute." *Cf. id.* ¶¶ 45, 48 (explaining that the complainant's willingness to testify about her sexual relationship with the defendant showed that the "proffered evidence would have had little prejudicial impact on [her]"). It thus was an abuse of discretion for the district court to limit the cross-examination of Chavez under the rape shield statute.

## II.    We Will Not Affirm on Right for Any Reason Grounds

{12}    Acknowledging the district court's error, the State invokes the right for any reason doctrine, arguing that we may affirm on other grounds—namely, that the excluded evidence was irrelevant or cumulative. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 (providing that, "[u]nder the right for any reason doctrine," we may affirm the district court "on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below" (internal quotation marks and citation omitted)). Principally, the State asserts that the excluded evidence was not relevant and therefore was properly excluded. Defendant argues, as he did at trial, that the proffered evidence—as a prior inconsistent statement by omission—was relevant and admissible impeachment evidence.[1] *See* Rule 11-613 NMRA. We agree with Defendant.

---

[1]Because we agree with Defendant on this ground, we find it unnecessary to consider his additional theories of relevance—specifically, that the excluded evidence was proof of bias or motive to fabricate or was a specific instance of conduct bearing on Chavez's character for truthfulness under Rule 11-608(B)(1) NMRA.

**{13}** "Evidence that reflects on a witness's credibility is relevant" and therefore admissible. *Patterson*, 2017-NMCA-045, ¶ 7 (alteration, internal quotation marks, and citation omitted). It is settled that a prior inconsistent statement may be used to impeach a witness's credibility. *See Astorga*, 2015-NMSC-007, ¶ 31 ("[P]rior inconsistent statements are inherently relevant for a 'non-hearsay' purpose: impeaching a witness's credibility."); *see also State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804 (providing that "a witness's prior inconsistent statements may be used to cast doubt on the witness's credibility"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

**{14}** It also is settled that a prior inconsistent statement may take the form of an omission. Nearly a century ago, our Supreme Court described the circumstances in which a prior omission is considered an inconsistency probative of a witness's credibility:

> It is well understood that, if the witness when [they have] an opportunity to speak, and where it would be natural to speak, or where it was [the witness's] duty to speak, fails to make an important disclosure, which [the witness] afterwards makes on the stand, it is a circumstance which, although susceptible of explanation, if unexplained, tends to impair the credibility of the witness.

*State v. Archer*, 1927-NMSC-002, ¶ 9, 32 N.M. 319, 255 P. 396; *see also State v. Foster*, 1998-NMCA-163, ¶ 15, 126 N.M. 177, 967 P.2d 852 (concluding that there was "substantial probative value in [the d]efendant's failure to mention an important aspect of an incident when giving an ostensibly full account of the incident [to a detective]"); *State v. Calvillo*, 1990-NMCA-046, ¶¶ 15, 17, 110 N.M. 114, 792 P.2d 1157 (concluding that the witnesses' failures to report a suspect to police after the defendant's arrest were "probative of the witnesses' credibility" because they were inconsistent with their subsequent trial testimony portraying the suspect, not the defendant, as the perpetrator). Although the substance of an omission is important to determining whether it is the type of information that one would be expected to include when giving an "ostensibly full account" of an incident to authorities, *Foster*, 1998-NMCA-163, ¶ 15, it is the inconsistency itself that calls a witness's credibility into question. *See Macias*, 2009-NMSC-028, ¶ 20 ("When impeaching with prior inconsistent statements not made under oath, it is the fact of the inconsistency that is admissible, not the substantive truth or falsity of the prior statement."); *see also* Roger Park & Tom Lininger, *The New Wigmore: A Treatise on Evidence: Impeachment and Rehabilitation* § 5.1 (2023) (explaining that a witness's inconsistency demonstrates they are "capable of error about the matter in question," and that whether the error be "due to partisan bias, to defects of perception, to bad memory, or to an outright lie," it raises concern that the witness "has made errors at other points in [their] testimony").

**{15}** Defendant contends that Chavez's months-long failure to disclose to law enforcement and medical personnel her ongoing, consensual sexual relationship with Defendant was inconsistent with her ready admission at trial to this relationship,

including to having consensual sex with Defendant the day before the incident. Defendant further contends that the information Chavez provided at trial was of the type one would expect Chavez to disclose when pursuing stalking, rape, kidnapping, and battery charges against Defendant. We find Defendant's contentions persuasive, particularly in the absence of an argument from the State on these points. *See State v. Serna*, 2018-NMCA-074, ¶¶ 32-34, 429 P.3d 1283 (declining to decide an undeveloped, right for any reason argument); *State v. Randy J.*, 2011-NMCA-105, ¶¶ 27-30, 150 N.M. 683, 265 P.3d 734 (same); *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be"). We agree with Defendant that information about Chavez and Defendant's ongoing, consensual sexual relationship is the type of information that would have been "natural" to tell authorities when "giving an ostensibly full account" of the allegations against Defendant. *See Archer*, 1927-NMSC-002, ¶ 9; *Foster*, 1998-NMCA-163, ¶ 15. Chavez's failure to disclose these naturally pertinent facts was relevant to her credibility as a witness, which could have affected how the jury weighed her testimony, including her testimony supporting the kidnapping charge. *See Patterson*, 2017-NMCA-045, ¶ 7; *see also Commonwealth v. Thayer*, 479 N.E.2d 213, 215 (Mass. App. Ct. 1985) (holding that it was reversible error for the trial court to exclude evidence that "the complainant was voluntarily keeping friendly company with the two men she charged had raped her only forty-eight hours earlier" because it contradicted the complainant's trial testimony and thus "was a circumstance that might have engendered skepticism in the minds of the jury about [the complainant's] version of the events"). Accordingly, we conclude that the excluded evidence was a prior inconsistent statement by omission and plainly relevant to Chavez's credibility.

**{16}** To the extent the State advances the alternative argument that, if Chavez's omission is deemed relevant, it nonetheless was inadmissible because it was cumulative of other evidence, we likewise are unpersuaded. *See* Rule 11-403 NMRA (permitting a trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, "needlessly presenting cumulative evidence"); *see also State v. Stanley*, 2001-NMSC-037, ¶ 32, 131 N.M. 368, 37 P.3d 85 (stating that a witness's prior inconsistent statement must meet the balancing test of Rule 11-403). According to the State, Chavez's credibility already had been impeached because defense counsel inquired about her initial delay in reporting the alleged sexual assault. From this, the State surmises, Chavez's omission "would not have added anything to the jury's . . . assessment of her credibility." The State, however, fails to expound on or cite authority supporting this idea; nor does the State advance any other argument why Chavez's omission would be inadmissible under Rule 11-403 or otherwise. *See Serna*, 2018-NMCA-074, ¶¶ 32-34; *Randy J.*, 2011-NMCA-105, ¶¶ 27-30; *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review unclear or undeveloped arguments and may assume, in the absence of cited authority, that no authority supporting the argument exists).

**{17}** In contrast to the State's bare assertions that the failure to disclose was cumulative, we find compelling Defendant's argument that Chavez's omission regarding the ongoing, sexual relationship was "more powerful impeachment evidence" than the evidence of her delayed reporting of the alleged sexual assault. While the jury could have attributed Chavez's one-day delay in reporting the alleged sexual assault to recent trauma, the jury may not have attributed, to use Defendant's words, a "similarly innocent explanation" to her months-long failure to disclose the full nature of her relationship with Defendant, all the while pursuing stalking, rape, kidnapping, and battery charges against him. *Cf. State v. Zamarripa*, 2009-NMSC-001, ¶ 59, 145 N.M. 402, 199 P.3d 846 (concluding, in a harmless error analysis, that a witness's self-inculpating statement was corroborative and not cumulative because it "would be much more powerful in the eyes of the jury" than other evidence establishing the same fact). Thus, we cannot say the probative value of Chavez's omission was so diminished by her other inconsistency that the omission was cumulative. *Cf. State v. Villanueva*, 2021-NMCA-016, ¶ 39, 488 P.3d 680 (concluding that evidence was cumulative because the defendant could have established "both the content and tone of the conversation by alternative means, [thereby] greatly diminishing . . . the probative value of the [evidence]"), *cert. denied* (S-1-SC-38679).

**{18}** Because we conclude that the excluded evidence was relevant and not cumulative, we decline the State's invitation to affirm the district court's ruling on other grounds. Accordingly, we hold that the district court erred by refusing to allow Defendant to impeach Chavez with her prior omission. *See Stanley*, 2001-NMSC-037, ¶ 33 (concluding that the district court abused its discretion by preventing the defendant from impeaching a witness with his prior inconsistent statement because the prior inconsistent statement contradicted the witness's trial testimony and "would have been especially probative," which outweighed its prejudicial effect under Rule 11-403).

### III.   The District Court's Error Was Not Harmless

**{19}** An erroneous evidentiary ruling is not grounds for a new trial unless "the error was prejudicial rather than harmless." *State v. Smith*, 2016-NMSC-007, ¶ 46, 367 P.3d 420 (internal quotation marks and citation omitted). Nonconstitutional errors, such as the evidentiary error at issue, are deemed harmful if there is a reasonable probability that the error affected the verdict. *State v. Vargas*, 2016-NMCA-038, ¶ 24, 368 P.3d 1232. To determine the likely effect of the error, we must evaluate all of the circumstances, including, as relevant here, the importance of the witness's testimony to the prosecution's case, other evidence of the defendant's guilt to understand the role of the error within the context of the trial, and the cumulative nature of the error. *See Tollardo*, 2012-NMSC-008, ¶ 43 (citing *State v. Johnson*, 2004-NMSC-029, ¶ 11, 136 N.M. 348, 98 P.3d 998); *Johnson*, 2004-NMSC-029, ¶ 11.

**{20}** We conclude that Defendant has met the initial burden of establishing prejudice. *See Astorga*, 2015-NMSC-007, ¶ 43 ("[The d]efendant bears the initial burden of demonstrating that he was prejudiced by the error."); *State v. Cabral*, 2021-NMCA-051, ¶ 35, 497 P.3d 670 (same). Defendant persuasively argues that he was prejudiced by

the district court's ruling, in that "[Chavez] was the State's most crucial witness, making impeachment of her critical to the defense." He explains that Chavez's credibility was especially important to the kidnapping charge because Chavez "provided the State's only evidence of restraint, including evidence of restraint beyond that involved in the battery to which [Defendant] admitted." *See Patterson*, 2017-NMCA-045, ¶ 12 (explaining that the state's primary witness's "credibility and character for truthfulness" was "axiomatically central" to the case because his testimony was "crucial to the case against [the d]efendant"). Given the prosecution's reliance on Chavez's testimony, especially that as to restraint, we agree with Defendant that Chavez's credibility was "the lens through which the jury evaluated the State's case." *See id.* ¶ 20.

**{21}**   And there is reason to believe the jury doubted Chavez's credibility. The jury acquitted Defendant on the two criminal sexual penetration charges, the evidence of which came primarily from Chavez's testimony. *See Tollardo*, 2012-NMSC-008, ¶ 56 (noting that the jury must have had "at least some serious doubts about [the witness's] credibility" because it acquitted the defendant on two other charges that were "supported almost exclusively" by that witness's testimony). While the State surmises that the excluded impeachment evidence would have done nothing to call Chavez's credibility into further doubt, we see it differently. As discussed, the excluded evidence was not merely cumulative of other impeachment evidence, but instead offered potentially more powerful impeachment evidence. *See Johnson*, 2004-NMSC-029, ¶ 39 ("[O]nly in very clear instances of accumulated evidence—where the evidence is so redundant that its corroborative effect is negligible—should the improper admission or exclusion of one accretion of such evidence be considered 'cumulative' for purposes of our harmless-error analysis."). There was substantial probative value in Chavez's failure to mention her ongoing, consensual sexual relationship with Defendant when giving her account to law enforcement and medical personnel; the jury—if presented with this evidence—properly could have found a telling inconsistency between Chavez's prior omission and her trial testimony, drawing her credibility into further doubt. *See Foster*, 1998-NMCA-163, ¶ 15.

**{22}**   Given the importance of Chavez's credibility to the State's case, particularly as to restraint, as well as the significant probative value of the excluded impeachment evidence, we conclude Defendant was prejudiced by the district court's ruling. *Cf. State v. Martinez*, 1996-NMCA-109, ¶ 21, 122 N.M. 476, 927 P.2d 31 (concluding that the district court's decision to prevent the defendant from impeaching a witness was not harmless error, where the witness was the only one who testified in support of the charge against the defendant, and the state's case was "intimately tied to [the witness's] credibility"); *State v. Stephen F.*, 2008-NMSC-037, ¶ 41, 144 N.M. 360, 188 P.3d 84 (concluding that a district court's refusal to allow cross-examination of the state's witness regarding her motive to lie was not harmless error because the case "boil[ed] down to a question of credibility").

**{23}**   In response to Defendant's showing of prejudice, the State asserts only that, as to the kidnapping charge, the district court's ruling "could not have prejudiced Defendant . . . because whether he and [Chavez] still had some sexual relationship ha[d] nothing to

do with the elements of that charge." The State misses the point. The value of the excluded evidence was not to establish that Defendant and Chavez had a sexual relationship. Instead, as discussed at length, the value of the excluded evidence was to impeach Chavez's credibility. *Cf. Macias*, 2009-NMSC-028, ¶ 20 (providing that "it is the fact of the inconsistency that is admissible, not the substantive truth or falsity of the prior statement"). The State has not otherwise addressed the harmfulness of the district court's error. Thus, in light of Defendant's showing of prejudice, and the State's undeveloped corresponding argument, we conclude the error was not harmless. *See Patterson*, 2017-NMCA-045, ¶¶ 19-20 (observing that the state bears the burden to prove that an evidentiary error is harmless, and that, in the absence of an argument as to why the error was harmless, this Court will not guess at what that argument might be; concluding that the exclusion of impeachment evidence relating to the state's primary witness was not harmless error); *State v. Duran*, 2015-NMCA-015, ¶¶ 19-20, 343 P.3d 207 (providing, in the nonconstitutional error context, that "the [s]tate bears the burden to prove that the error was harmless"); *see also State v. Serna*, 2013-NMSC-033, ¶ 32, 305 P.3d 936 (concluding that a nonconstitutional error was harmless because "the [s]tate satisfie[d the Court] that 'there is no reasonable probability' that evidence of [the d]efendant's prior convictions affected [the] verdict and contributed to [the d]efendant's convictions").[2]

## CONCLUSION

{24}    For the foregoing reasons, we reverse Defendant's conviction for kidnapping. Because Defendant has not challenged the sufficiency of the evidence supporting his conviction, and we are otherwise satisfied that substantial evidence supported his conviction, we remand for a new trial consistent with this opinion. *See State v. Catt*, 2019-NMCA-013, ¶ 7, 435 P.3d 1255 (providing that retrial is not barred on double jeopardy grounds if the conviction was supported by sufficient evidence).

---

[2]Our case law has not been entirely consistent when describing the respective burdens of the defendant and the state in the nonconstitutional harmless error context. For example, prior to deciding *Tollardo*, our Supreme Court indicated that it was the defendant's burden alone to show that a nonconstitutional error warranted reversal. *See State v. Gonzales*, 1991-NMSC-075, ¶ 27, 112 N.M. 544, 817 P.2d 1186 (providing that the "defendant must show a reasonable probability that the [district] court's failure to allow the testimony contributed to his conviction"). This is in contrast to later statements by our Supreme Court, as well as this Court, that the defendant has the initial burden of showing a nonconstitutional error was prejudicial, *see, e.g.*, *Astorga*, 2015-NMSC-007, ¶ 43 (providing that, for nonconstitutional errors, "[the d]efendant bears the initial burden of demonstrating that he was prejudiced by the error" in the harmless error analysis); *Cabral*, 2021-NMCA-051, ¶ 35 (same), while the state appears to have the ultimate burden of showing the error was harmless, *see, e.g.*, *Serna*, 2013-NMSC-033, ¶ 32 (observing, for a nonconstitutional error, that the state satisfied its burden of showing harmlessness); *Duran*, 2015-NMCA-015, ¶ 20 (providing that, for nonconstitutional errors, "[t]he [s]tate bears the burden to prove that the error was harmless"); *Patterson*, 2017-NMCA-045, ¶¶ 19-20 (observing that the state bears the burden to prove that an evidentiary error is harmless). But even if the ultimate burden were on Defendant to show the error was harmful, as in *Gonzales*, the result in this case is not altered because Defendant has shown there is "a reasonable probability that the [district] court's [error] contributed to his conviction." *See* 1991-NMSC-075, ¶ 27.

**{25}** IT IS SO ORDERED.

JENNIFER L. ATTREP, Judge

WE CONCUR:

GERALD E. BACA, Judge

KATHERINE A. WRAY, Judge