# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-051**

**Filing Date: July 20, 2021**

**No. A-1-CA-36757**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOSÉ CABRAL a/k/a
JOSÉ DE JESUS CABRAL,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Marci E. Beyer, District Judge**

Released for Publication October 12, 2021.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**YOHALEM, Judge.**

**{1}**    Defendant José Cabral appeals his conviction of two counts of criminal sexual contact of a minor, pursuant to NMSA 1978, Section 30-9-13(B)(1) and (C)(1) (2003). Defendant, who is a non-English speaker, contends that the district court abused its discretion when it excluded the testimony of his polygraph expert, ruling that Defendant had violated Rule 11-707(D) NMRA, by failing to provide the prosecutor with a transcription and translation of the Spanish-language audio recording of his polygraph

examination thirty days before trial. The district court concluded that Defendant's failure to have a certified court interpreter prepare these documents and produce them to the State violated Rule 11-707(D)(3)'s requirement for an "audible" audio or visual recording of the examination, making cross-examination difficult or impossible. We agree with Defendant that the district court's decision to exclude his polygraph examiner's testimony was an abuse of the court's discretion, and that the court's erroneous exclusion of the key defense witness prejudiced Defendant and was not harmless error. We, therefore, reverse and remand for a new trial.

## BACKGROUND

**{2}**     In 2013, Victim reported to police that seven years earlier, when she was eight years old, Defendant inappropriately touched her, once on her clothed breast and a second time, under her clothes, on her buttocks. Defendant categorically denied Victim's allegations.

**{3}**     During the investigation of the allegations, Las Cruces Police Department Officer Manuel Carrera offered Defendant the opportunity to take a polygraph examination to help the police determine the truth of his denial. Defendant speaks only Spanish. Officer Carrera attempted to locate a bilingual polygraph examiner to conduct the examination. Because the officer was not able to find a bilingual examiner in Doña Ana County, the police never conducted a polygraph examination of Defendant.

**{4}**     Defendant located a qualified bilingual polygraph examiner and underwent a polygraph examination on December 4, 2014. The pre- and post-test interview were in Spanish, and the questions were asked and answered in Spanish. The pre- and post-test interviews of Defendant and the full examination itself were recorded, in conformance with Rule 11-707(C)(6). The six requirements of Rule 11-707(C), for admissibility of the results, were met: (1) the polygraph examiner was qualified; (2) the examination was quantitatively scored; (3) the polygraph examiner was informed as to Defendant's background prior to the examination; (4) at least two relevant questions were asked; (5) at least three charts were taken of Defendant; and (6) the entire examination, including pre- and post-test interviews, was recorded in full on an audio recording device. The polygraph examiner would have testified that the examination was valid and reliably showed that Defendant's denial that he touched Victim in a sexual manner was truthful.

**{5}**     The State tried Defendant twice. At the first trial, on August 15, 2016, Defendant sought to introduce the polygraph examiner's testimony. The district court, however, excluded the testimony because defense counsel had failed to timely disclose the charts associated with the polygraph examination, the full list of questions, and the audio recording to the prosecution thirty days before trial, as required by Rule 11-707(D). The district court proceeded to trial without the exculpatory polygraph evidence. The first jury was unable to agree on which of the conflicting versions of the facts to believe, and the first trial ended in a mistrial.

**{6}** Defendant's second trial was set for December 12, 2016. More than thirty days before trial, as required by Rule 11-707(D), Defendant sent the State the charts prepared by the polygraph examiner, the full list of questions, and an audio recording of the entire examination, which included all pre- and post-test interviews.

**{7}** Five days before trial, Defendant filed an emergency motion in limine asking the district court to rule on the admissibility of the polygraph testimony. The motion was heard on the morning of the first day of trial, prior to jury selection. At the hearing on the motion, the State agreed that Defendant met the disclosure and production requirements of Rule 11-707(D). The State nonetheless delayed stipulating to the admission of the polygraph examiner's testimony, telling the district court that it wanted to confirm with the examiner on voir dire, under oath, that the audio recording included the entirety of the examiner's pre- and post-test interviews with Defendant. The district court conditionally admitted the polygraph evidence pending the State's voir dire of the polygraph examiner, set for the next morning.

**{8}** The district court then proceeded to jury selection. Both parties questioned the jurors about their view on the reliability of polygraph examinations. In its opening statement, the defense told the jury that they would be hearing polygraph evidence and would be asked to evaluate its reliability.

**{9}** On the second day of trial, the State conducted its voir dire of the polygraph examiner. Having satisfied itself that the audio recording was complete, the State stipulated to the admission of the polygraph examiner's testimony. The district court then asked whether the jury would be asked to view anything in Spanish. The prosecution responded that the State intended to play some short sections of the audio recording of the polygraph examination on cross-examination and suggested that either the bilingual polygraph examiner or the court interpreters could translate. The court indicated that it would require any translation to be done by certified court interpreters and would not allow the examiner to translate.

**{10}** The next morning, on the third day of trial, the prosecutor reported to the court that he had spoken to the court interpreters and had given them time stamps identifying the portions of the audio recording the State planned to use in its cross-examination of the polygraph examiner. The prosecutor represented that he expected to use a total of fifteen minutes of the two-hour examination in his cross-examination. The prosecutor clarified that most of his cross-examination would involve questions and answers in English about the conduct of the examination and the basis for the examiner's findings. The prosecutor intended, in addition to his other cross-examination, to play a handful of the recorded questions and answers so he could ask the examiner about why that particular question and answer suggested to the examiner that the test was valid. The prosecutor told the court that he had been able to review and understand the recording sufficiently for his own preparation, and, therefore, had not had it translated.

**{11}** The court questioned the interpreters who were present in the courtroom to translate for Defendant and several Spanish-speaking jurors about their progress in

translating the portions of the audio requested by the prosecutor. The interpreters reported they were making progress. They explained that they would not be able to translate simultaneously, but would need a short section played, followed by a translation.

**{12}**  On the morning of the fourth day of trial, just before the polygraph examiner's testimony was to begin, the district court interpreters appeared with their supervisor. The interpreters reported to the court that they were having difficulty translating the audio because the voices overlapped in a few places, and in other places they were having a hard time determining who was speaking. The supervisor informed the court that the interpreters could not perform a simultaneous translation of the fifteen minutes of audio sought by the prosecution, within the standards of their profession. The supervisor did not mention whether it would be possible to translate a sentence at a time, as proposed the day before. The supervisor relied on a position paper prepared by the *National Association of Judiciary Interpreters and Translators*, which stated that the best practice is to first transcribe an audio recording in its original language, and then translate that transcription into English. The interpreters' time estimate for this process was more than an hour for each minute of audio. The State's requested fifteen minutes would thus take more than fifteen hours to transcribe and translate. Finally, the supervisor told the district court that one of her interpreters had told her that the interpreter had talked to defense counsel about transcribing and translating this audio recording quite a while before trial and that he had done nothing.

**{13}**  Following this report from the interpreters, with the prompting of the trial judge, the State moved to exclude the testimony of Defendant's polygraph examiner "for failure to comply with the requirements of [the] law." The State claimed that "the spirit of the law" was frustrated by Defendant's failure to provide a transcription and translation thirty days before trial. The district court granted the motion, admonishing Defendant's counsel about his lack of preparation.

**{14}**  Defendant objected to the exclusion of the polygraph evidence and asked the court for a hearing with sworn testimony. The district court allowed defense counsel to question the supervisor under oath and to make an offer of proof that the polygraph examiner was certified and his examination of Defendant satisfied all parameters set forth in Rule 11-707(C). On cross-examination by defense counsel, the supervisor admitted that, despite telling the district court that defense counsel had been advised by one of the interpreters that the polygraph audio needed to be transcribed and translated before trial, the interpreter reported only that defense counsel wanted a document translated, not an audio recording. The supervisor admitted the conversation likely did not relate to the polygraph audio in this case.

**{15}**  Defense counsel renewed his objection to the district court's exclusion of a critical witness for the defense, arguing the defense had fully satisfied the requirements of Rule 11-707(D), by timely producing a copy of the original audio recording of the entire examination. The district court refused to change its decision, explaining that it was not excluding the polygraph examiner's testimony based on any concern about the

examiner's qualifications or compliance with the requirements for admissibility found in Rule 11-707(C). The district court stated that its exclusion of the examiner's testimony was based on the court's construction of Rule 11-707(D)(3)'s requirement placing the responsibility on the proponent of the examination to provide a copy of the audio recording of the examination. The district court stated that it interpreted the rule to require the entire recording to be "audible," and that, in the court's view, when the examination is of a Spanish speaker, it is "incumbent on the person who does the polygraph . . . to have [the audio transcribed] and then [translated]." The court described the purpose of Rule 11-707(D)(3) as the production of a recording that could be played in court. Stating that "we don't have a sufficient record for [cross-examination,]" the district court refused to reconsider its exclusion of the polygraph examiner's testimony.

**{16}**　Trial then proceeded without the polygraph evidence.

**{17}**　The evidence at trial pitted Victim's testimony about two incidents of inappropriate touching by Defendant, who is Victim's uncle, against the testimony of Defendant's close relatives denying that the incidents had or even could have occurred as reported by Victim. There was no physical evidence of inappropriate touching presented to the jury. There was no eye witness testimony. Various family members, who admitted there was a schism between Victim's maternal and paternal families, testified about their memory of events twelve years earlier when Victim alleged the incidents had occurred. The jury convicted Defendant of both counts of criminal sexual contact of a minor, pursuant to Section 30-9-13(B)(1) and (C)(1).

## DISCUSSION

**{18}**　We are called upon in this appeal to review the district court's ruling excluding the testimony of Defendant's polygraph examiner.

**{19}**　"A [district] court's decision to admit or exclude evidence for failure to comply with notice and disclosure requirements is reviewed on appeal for an abuse of discretion." *State v. Guerra*, 2012-NMSC-014, ¶ 23, 278 P.3d 1031. "A district court abuses its discretion when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *State v. Oppenheimer & Co.*, 2019-NMCA-045, ¶ 6, 447 P.3d 1159 (internal quotation marks and citation omitted).

**{20}**　In this case, the district court construed Rule 11-707(D)'s notice and disclosure provisions to require Defendant, the proponent of the polygraph evidence, to have the recording of his Spanish-language polygraph examination transcribed and translated into English by a certified court interpreter, and then to provide that transcription and translation, along with a copy of the recording, to the prosecution at least thirty days prior to trial. Based on its construction of Rule 11-707(D), the district court decided Defendant had violated Rule 11-707(D)(3), and excluded the testimony of the defense expert.

**{21}** We hold that Rule 11-707(D) does not impose on the proponent of polygraph expert testimony a requirement to produce a transcription and translation of the audio recording of the examination to the opposing party. The district court misconstrued both the language and purpose of Rule 11-707(D), improperly excluding a key defense witness. The exclusion of the polygraph examiner's testimony was, therefore, an abuse of the court's discretion.

**{22}** We conclude, as well, that the district court's error was not harmless. The erroneous exclusion of the polygraph examiner's testimony deprived Defendant of his central defense witness, seriously impairing his ability to mount a defense in a trial, which turned entirely on credibility. There is a reasonable probability that the result would have been different had this evidence been admitted.

**{23}** Given our holding, we need not address Defendant's ineffective assistance of counsel claim. We reverse and remand for a new trial.

**I.     Rule 11-707(D)(3) Does Not Require Production of a Transcription and Translation of the Recorded Polygraph Examination of a Non-English Speaker**

**{24}** We first construe Rule 11-707(D) to determine if that rule, which governs the admission of polygraph evidence, supports the district court's ruling.

**{25}** "Our review is de novo because the interpretation of rules is a question of law." *H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 2008-NMCA-013, ¶ 5, 143 N.M. 404, 176 P.3d 1136. We interpret our Supreme Court's rules of procedure just as we interpret statutes: by determining the underlying intent of the enacting authority. *See id.* "We begin by examining the plain language of the rule as well as the context in which it was promulgated, including the history of the rule and the object and purpose." *State v. Aslin*, 2020-NMSC-004, ¶ 9, 457 P.3d 249 (internal quotation marks and citation omitted). Finally, we take care to avoid an absurd or unreasonable result. *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801.

**{26}** The parties agree that the plain language of Rule 11-707(D)—the provision that requires production to the opposing party of copies of the polygraph examiner's reports, questions, charts, and an audio or video recording of the full examination—does not explicitly require production to the opposing party of a transcription or translation when a polygraph examination is conducted in Spanish or any language other than English. Rule 11-707(D) states that the notice produced to the opposing party of intent to use polygraph evidence must include four reports, which must be attached to or produced with the notice. The district court focused on the third item listed:

> (3)     a copy of the audio or video recording of the entire examination, including the pretest interview, and, if conducted, the post-test interview[.]

Rule 11-707(D)(3).

**{27}** Although the plain language of Rule 11-707(D)(3) does not explicitly require the production of a transcription and translation of audio or video recordings, requiring only the production of the recording itself, we are mindful of our Supreme Court's admonition that caution must be exercised in applying the plain meaning rule. *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. Even language seemingly clear on its face may mask reasons found in the rule's history or background, or found in a conflict between statutory wording and overall intent, that give rise to "genuine uncertainty as to what the [L]egislature was trying to accomplish." *Id.*

**{28}** We turn therefore to the history and purpose of Rule 11-707. In *Lee v. Martinez*, the State asked our Supreme Court to repeal Rule 11-707 and hold that polygraph results are *per se* excluded as scientifically unreliable. 2004-NMSC-027, ¶¶ 1-4, 136 N.M. 166, 96 P.3d 291. The Supreme Court conducted a *Daubert/Alberico*[1] analysis of the scientific reliability of polygraph examination results and concluded that the results are both sufficiently helpful to the jury in evaluating the truthfulness of a witness's testimony and sufficiently reliable, to be admitted, so long as the examination is conducted in accordance with Rule 11-707's requirements. *Lee*, 2004-NMSC-027, ¶¶ 17, 48. Instead of repealing Rule 11-707, our Supreme Court ordered our district courts "to comply with Rule 11-707 in determining whether to admit polygraph examination results." *Lee*, 2004-NMSC-027, ¶ 50.

**{29}** Our Supreme Court stated its intent in *Lee* to resolve any doubt regarding the admissibility of polygraph evidence. The Court reiterated its general view that doubts regarding the admissibility of scientific evidence should be resolved "in favor of admission, rather than exclusion," and applied that view to polygraph testimony. *Id.* ¶ 16. The remedy for any doubts about the reliability of the polygraph examination, according to the Court, "is not exclusion; the remedy is cross-examination, presentation of rebuttal evidence, and argumentation." *Id.* ¶ 48.

**{30}** The Court also addressed the notice and disclosure requirements of Rule 11-707(D) specifically in its decision in *State v. Gonzales*. The Court held that the purpose of the Rule 11-707(D) notice and disclosure requirements is "to prevent unfair surprise and to ensure an adequate opportunity to prepare rebuttal." *State v. Gonzales*, 2000-NMSC-028, ¶¶ 21, 30, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. Rule 11-707(D) places the responsibility for preparing argument, cross-examination, and rebuttal on the party opposing the polygraph evidence, facilitating that preparation by ensuring that the opponent receives timely notice that polygraph evidence will be offered, along with copies of the materials prepared by the polygraph examiner prior to and during the examination and an audio or video recording of the examination itself. Our Supreme Court noted that these notice and disclosure requirements serve to "give the opposing party an opportunity to collect rebuttal evidence[,]" *Gonzales,* 2000-NMSC-028, ¶ 21 (internal quotation marks and

---

[1]*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *State v. Alberico*, 1993-NMSC-047, 116 N.M. 156, 861 P.2d 192.

citation omitted), or to "conduct[] another exam if [the opponent] was unsatisfied with the results of the first exam." *Id.* ¶ 22. There is no suggestion in *Gonzales* that the proponent of the examination is required to assist the opposition in preparing its cross-examination or rebuttal beyond the requirement that the proponent timely produce the examination materials prepared by and used by the examiner during the examination and in the examiner's determination of the results.

**{31}** This Court is not aware of any such requirement in other situations where production of a document or recording is required. Our Supreme Court's rules governing discovery, for example, require only that each party produce materials in his or her possession; there is no requirement that a party create new documents, organize or reformat information, or translate documents to facilitate cross-examination by the opposing party. *See* Rule 5-502(A)(1) NMRA (limiting the scope of production to documents or tangible things "which are within the possession, custody or control of the defendant"). Importantly, the recording of the polygraph examination is not the evidence the defense sought to present to the jury; that evidence was the testimony of the polygraph examiner as to the results of the examination. The recording was simply the raw data relied on by the examiner.

**{32}** Finally, the district court's interpretation of Rule 11-707(D)—requiring the transcription and translation of the entire audio recording—fails to consider the difficulty and cost of requiring a transcription and translation of the entire recording. In this case, the audio recording was two hours long. According to one of the district court's interpreters in this case, that transcription alone would take approximately an hour per minute of recorded material. The court's construction of Rule 11-707(D)(3) would have required Defendant to hire an independent certified court interpreter[2] to transcribe and translate all 120 minutes of the recording, something that could require more than 120 hours of full-time work (three to four weeks, of full-time work) by a certified court interpreter. Even assuming that other interpreters could process the transcription and translation more efficiently than the estimate given the court, the district court's construction would impose an additional cost upon every party seeking to admit polygraph evidence, without a basis in rule or law for doing so. The district court's construction thus "leads to an unreasonable or absurd result." *Marshall*, 2004-NMCA-104, ¶ 7.[3]

**{33}** We therefore conclude that the district court premised the exercise of its discretion on a misapprehension of the law. Defendant did not violate the notice and disclosure requirements of Rule 11-707(D), and it was error to exclude the polygraph testimony on this basis.

---

2The district court interpreters testified that their office is not available for this work and that an interpreter other than a district court interpreter would have to be hired and paid outside the district court by defense counsel.

3We note as well that the district court did not turn to Rule 5-122 NMRA, which offers guidance to our district courts on interpretation and translation in criminal cases. That rule permits consecutive interpreting of each sentence when simultaneous translation of audio recordings is not possible. Rule 5-122(E)(10).

## II. Exclusion of the Testimony of Defendant's Polygraph Examiner Was Not Harmless Error

**{34}** Defendant contends that the district court's error in excluding the polygraph expert testimony was not harmless and resulted in reversible error. We agree.

**{35}** We review the improper exclusion of evidence for harmless error. *See State v. Astorga*, 2015-NMSC-007, ¶ 42, 343 P.3d 1245 ("When an error is preserved, we review for harmless error[.]"). "Absent a constitutional violation, we look to whether there is a reasonable probability that the error affected the verdict." *Id.* ¶ 43. "Defendant bears the initial burden of demonstrating that he was prejudiced by the error." *Id.*

**{36}** In this case, Defendant sought to introduce polygraph evidence that his testimony denying that he touched Victim in a sexual way was truthful. The jury was confronted with directly conflicting testimony. There was neither physical evidence of inappropriate touching by Defendant, nor was there any witness to the incidents described by Victim. At Defendant's first trial, where the polygraph evidence was properly excluded, the jury was unable to reach a decision. In the second trial, the jury was expecting to hear polygraph evidence from the defense based on voir dire and Defendant's opening statement. That unfulfilled expectation likely led the jury to speculate about why that evidence was withdrawn, to wonder whether it was excluded because it was not reliable, or did not show that Defendant was truthful.

**{37}** Based on the circumstances at trial, there is a reasonable probability that the exclusion of the polygraph evidence had an impact on the verdict. The error was therefore not harmless and requires reversal. *Tollardo*, 2012-NMSC-008, ¶ 25.

## CONCLUSION

**{38}** For the reasons stated, we reverse and remand for a new trial.

**{39}** IT IS SO ORDERED.

JANE B. YOHALEM, Judge

WE CONCUR:

KRISTINA BOGARDUS, Judge

MEGAN P. DUFFY, Judge