The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: May 27, 2025

**No. A-1-CA-40660**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**JACOBY STEVENS,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Erica E. Schiff, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Mallory E. Harwood, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**YOHALEM, Judge.**

{1}     In this appeal, the State asks this Court to determine whether it has an obligation under Rule 11-707(C) and (D) NMRA to collect and produce the raw data from an audio or video recording of a polygraph examination administered by law enforcement as part of its investigation of a crime, when the State does not seek to offer the results into evidence at trial. We conclude that when a polygraph examination is not offered into evidence at trial, Rule 11-707(C) and (D) does not require the collection and production to the opposing party of the polygraph recording and physical polygraph data in order to admit law enforcement's post-examination interrogation of the defendant into evidence. We therefore reverse the district court's order sanctioning the State and remand for trial consistent with this opinion.

**BACKGROUND**[1]

{2}     On February 20, 2020, local law enforcement was dispatched to the medical center in Raton, New Mexico, to investigate a report of child abuse. The child that medical staff believed had been abused was Defendant Jacoby Stevens' one-year-old stepson (Child). Child was not expected to survive serious injuries that included

---

[1]We draw the facts from law enforcement's affidavit for Defendant's arrest warrant, Defendant's predetention hearing, and Defendant's motions to exclude the polygraph examination and the responses and hearings on those motions.

a skull fracture and brain bleed. Defendant was questioned by a Raton police officer at the medical center about Child's injuries. Defendant admitted that he had been taking care of Child alone on February 20, 2020, while Child's mother was at work. When asked what could have caused Child's injuries, Defendant stated that the only potential cause was a fall from a rocking horse a few days before; Defendant reported that Child appeared to be fine on the two intervening days. Defendant stated that he had not noticed anything wrong with Child until late in the afternoon on February 20, 2020, when he noticed that Child was not breathing, and when he picked him up, Child was limp. When the officer asked Defendant if there were any other possible reasons for Child's injuries besides the fall from the rocking horse, Defendant stated he could not think of anything else. Child was transported to the University of New Mexico Hospital in Albuquerque, New Mexico, for treatment, and died there on February 22, 2020.

{3} On March 5, 2020, Defendant agreed to allow law enforcement to conduct a polygraph examination as part of the investigation into Child's death. For reasons not addressed by evidence in the record, the Raton Police Department asked Federal Bureau of Investigation (FBI) Agent Marcus McCaskill, who was qualified as a polygrapher, to administer the examination. Although he was not in custody, Defendant was *Mirandized* prior to the examination. Agent McCaskill informed Defendant that the polygraph examination would not be recorded. The purpose of

the examination was to determine whether Defendant's statement to Raton police—that the sole cause of Child's injuries was the fall from a rocking horse—was truthful. Defendant agreed to participate because he hoped to be ruled out as a suspect in Child's death. According to Agent McCaskill, the examination showed that Defendant was not being truthful.

{4}     After the polygraph examination concluded, Agent McCaskill questioned Defendant about his interaction with Child on the afternoon of February 20, 2020, the day Defendant brought Child to the hospital and the day doctors believed Child's injuries occurred. This interrogation was recorded. Defendant was told by Agent McCaskill (truthfully) that the doctors who treated Child's injuries did not believe such severe injuries could have been caused by falling off a rocking horse. Defendant responded by describing for the first time an incident that he claimed happened when Child was finishing lunch on February 20, 2020. Defendant told Agent McCaskill that Child had gotten tangled in the buckles on his high chair, that he had tried to disentangle Child, but Child slipped out of his hands and fell to the floor.

{5}     When told by Agent McCaskill that Child's doctors believed, based on his injuries, that Child must have been shaken, Defendant first told Agent McCaskill that he had playfully tossed Child in the air, and then explained that he also shook Child when he picked Child up from his crib and found him not breathing. When Defendant was told that Child's doctors believed that Child's skull fracture had been

caused by Child being forcefully hit on the head with a blunt instrument, Defendant said that he heard a "thump" as he was rushing to get Child to the hospital, and that Child may have hit his head on the door frame. Defendant put this new description of the events of February 20, 2020, into a handwritten statement, and signed and dated that statement, as did Agent McCaskill. The State charged Defendant with intentional child abuse resulting in death, contrary to NMSA 1978, Section 30-6-1(H) (2009).

{6}     Following Defendant's arrest, the State informally produced to the defense on March 11, 2020, before Defendant's pretrial detention hearing, both a copy of the audio recording of the post-examination interview of Defendant and Defendant's written statement, and, again, produced additional copies formally in a discovery package on April 6, 2020. The State gave the defense a copy of Agent McCaskill's polygraph examination report on March 18, 2020, stating Agent McCaskill's expert opinion as a polygrapher that Defendant was not being truthful in his responses to the relevant questions asked during the polygraph examination.

{7}     No audio or video recording of the polygraph examination had been made, pursuant to FBI policy, so no recording could be produced. The charts and other raw data were in the possession of the FBI, and FBI policy prohibited release of a copy for national security reasons. Therefore, the raw data also was not produced by the State to Defendant.

{8}     Although the State initially included Agent McCaskill on its witness list as a designated polygraph expert, it made clear in its subsequent briefings and in numerous court hearings that it did *not* seek to qualify Agent McCaskill as a polygraph expert or to question him at trial about having administered a polygraph examination to Defendant, about its results, or about his expert opinion of Defendant's truthfulness during the examination. The State made clear that its identification of Agent McCaskill as an expert was an error. The State explained to both defense counsel and the district court that it would question Agent McCaskill at trial solely about his post-examination interrogation of Defendant, and specifically about the statements made by Defendant during that interrogation. This questioning would lay the foundation for the admission of portions of the recording of the interrogation and of Defendant's handwritten, signed statement.

{9}     Defendant filed a series of motions with the district court seeking to exclude Agent McCaskill's testimony, the recording of Defendant's interrogation, and Defendant's written statement. Six hearings on evolving arguments were held by the district court over an eight-month period. At several of these hearings, the district court expressed its agreement with Defendant that Agent McCaskill's interrogation of Defendant and the statements made during that interrogation, as well as Defendant's written statement, were "part and parcel of the polygraph," and concluded that "all [polygraph] material would need to be disclosed in order for the

5

State to use . . . statements from [Agent McCaskill's post-examination interrogation]." The court apparently was relying on Rule 11-707's requirements for recording and disclosure of polygraph examinations.

{10} On May 24, 2022, the district court ordered the State to obtain copies of the polygraph charts from the FBI and produce them to the defense within thirty days. The order stated that the State must produce "all polygraph related materials requested in the underlying motion, including relevant questions, graphs, scores, and recordings *if they exist*."

{11} Despite efforts recognized by the district court as diligent, the best the State was able to do was to get FBI permission for defense counsel and a defense polygraph expert to review the polygraph charts at an FBI office. The court found that the review of the charts offered by the FBI was not an adequate disclosure to the defense because no notes could be taken or copies made.

{12} The court's decision sanctioning the State by excluding all evidence of Defendant's post-examination statements was made at a final hearing on discovery issues held on August 11, 2022, after additional motions from Defendant asking for exclusion of Defendant's post-examination interrogation and statement, and additional briefing by both parties. In his final motion for sanctions, Defendant renewed his argument that his statements in response to law enforcement's post-examination interrogation were an inextricable part of the polygraph examination.

Defense counsel claimed that all evidence of the interrogation of Defendant and Defendant's responses must be excluded from evidence as a sanction for the State's failure to fully comply with the requirements of Rule 11-707(C) and (D) for the collection and disclosure of data concerning a polygraph examination. Defendant mentioned numerous other theories for exclusion of the evidence, without presenting a developed argument. These included the State's alleged failure to comply with the May 24, 2022 order, with Rule 5-501(A)(1), (4), and (5) NMRA, and with Rule 11-106 NMRA, the evidentiary rule of completeness. Although defense counsel's argument is not entirely clear, Defendant appears to have relied on *State v. Harper*, 2011-NMSC-044, 150 N.M. 745, 266 P.3d 25, and *State v. Le Mier*, 2017-NMSC-017, 394 P.3d 959, to support his request for the exclusion of Agent McCaskill's testimony as a sanction for the State's failure to produce a recording of the polygraph examination and a copy of the charts showing the physical data collected during the examination.

{13}     The State contended in response that Rule 11-707(C) and (D)'s special collection and disclosure of data requirements apply only when a party seeks to admit into evidence at trial "[a] polygraph examiner's opinion as to the truthfulness of a person's answers in a polygraph examination." Because the State did not seek to admit the results of the polygraph examination, the State argued that Rule 11-707(C) and (D)'s special collection and disclosure of data requirements were not

applicable and that the data and polygraph examination recording were not material to Defendant's defense.

{14} At the conclusion of the August 11, 2022 hearing, on Defendant's motion to sanction the State, the district court agreed with Defendant that the State was required by Rule 11-707(C) and (D) to collect and provide a copy to Defendant of all of the evidence listed in Rule 11-707(D)(1)-(4). Because Defendant had been provided a copy of the polygraph examiner's report and a recording of the post-examination interrogation, the court's sanction focused on the charts, which were in FBI possession, and the failure of law enforcement to record the polygraph examination and provide a copy of that recording to Defendant.

{15} In addition to relying on Rule 11-707, the district court also found that it was unfair to allow the State to use the statements from Defendant's post-examination interrogation when the State had not collected and produced to Defendant a recording of the polygraph examination and the physical data from the polygraph examination. On these bases, the district court sanctioned the State by excluding Agent McCaskill as a witness and excluding as well all evidence of Defendant's statements during the post-examination interrogation by law enforcement, including the recording of that interrogation, and Defendant's signed statement. The State appealed.

**DISCUSSION**

{16}     In this case, the district court excluded all evidence of the statements made by Defendant during Agent McCaskill's post-polygraph examination interrogation of Defendant as a sanction for what the court concluded were violations by the State of its obligation to collect and disclose evidence to Defendant prior to trial. We address the district court's conclusion that law enforcement is required to comply with Rule 11-707's requirements for the collection and pretrial production of polygraph evidence when a polygraph examination is used by law enforcement solely to investigate a crime, and is not intended to be introduced into evidence at trial.

{17}     We conclude that the district court erred as a matter of law in concluding that Rule 11-707 requires law enforcement to collect and produce to the defense a copy of three charts from a polygraph examination and a recording of the entire examination, when the State is not seeking to offer polygraph evidence at trial. Because we find no discovery violation by the State under the facts of this case, we reverse the sanctions imposed by the district court and remand for further proceedings.

**I.     The Collection and Disclosure Requirements of Rule 11-707 Do Not Apply to the Admission of Statements Made to Law Enforcement in a Defendant's Post-Examination Interrogation**

**A.     Standard of Review**

{18}     We generally review a district court's imposition of a sanction—here the sanction of exclusion of witness testimony—for an abuse of discretion. *See Le Mier*, 2017-NMSC-017, ¶ 22. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). However, "even when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal quotation marks and citations omitted).

{19}     In this case, the construction of Rule 11-707(C) and (D)'s requirements for the collection and disclosure of evidence is a legal question, so we apply a de novo standard of review. *See State v. Cabral*, 2021-NMCA-051, ¶ 25, 497 P.3d 670 ("Our review is de novo because the interpretation of rules is a question of law." (internal quotation marks and citation omitted)). "We interpret our Supreme Court's rules of procedure just as we interpret statutes: by determining the underlying intent of the enacting authority." *Id.* "We begin by examining the plain language of the rule as

well as the context in which it was promulgated, including the history of the rule and the object and purpose." *Id.* (internal quotation marks and citation omitted). "Finally, we take care to avoid an absurd or unreasonable result." *Id.*

**B.     The History of the Admission of Polygraph Evidence at Trial in New Mexico and of Rule 11-707**

{20}     The history of the admission of polygraph examinations in New Mexico's courts and the adoption of Rule 11-707 by our Supreme Court provides insight into our Supreme Court's intent regarding this rule. Before our Supreme Court's adoption of Rule 11-707 in 1983, the case law in our appellate courts addressing polygraph examinations was focused on the admissibility of expert opinions at trial about truthfulness, based upon polygraph examination results. It was this precedent that led to the adoption of the rule. The early cases, beginning with *State v. Trimble*, 1961-NMSC-076, 68 N.M. 406, 362 P.2d 788, *overruled by State v. Dorsey*, 1975-NMSC-040, 88 N.M. 184, 539 P.2d 204, considered the admissibility of polygraph results when there was an agreement between the parties for its use. Even though there was an agreement by the parties at the time of the polygraph examination in *Trimble*, our Supreme Court held that the admission of polygraph evidence as to the truth of testimony, over objection at trial, was error. *See id.* ¶ 7. At that time, no state in the country admitted polygraph test evidence as to the truthfulness of testimony. *See Tafoya v. Baca*, 1985-NMSC-067, ¶ 6, 103 N.M. 56, 702 P.2d 1001.

{21} In 1974, this Court addressed the admission of polygraph test results in *State v. Alderete*, 1974-NMCA-019, 86 N.M. 176, 521 P.2d 138, *overruled by State v. Lucero*, 1974-NMSC-075, 86 N.M. 686, 526 P.2d 1091. This Court approved the admission of polygraph evidence when offered by a qualified polygraph examiner, finding that the scientific community, since *Trimble*, had accepted the results of polygraph examinations as scientifically reliable evidence of the truth of testimony. *Alderete*, 1974-NMCA-019, ¶ 14. Our Supreme Court overturned that opinion, reaffirming that polygraph results were admissible only by agreement of the parties, and not over objection at trial. *See Lucero*, 1974-NMSC-075, ¶ 18, *overruled by Dorsey*, 1975-NMSC-040.

{22} A year later, however, our Supreme Court reconsidered, and relying on our rules of evidence concerning relevance and the admission of expert opinion, our Supreme Court allowed admission of the results of a polygraph examination at trial, even over objection, when (1) "the court has evidence of the qualifications of the polygraph operator to establish [their] expertise"; (2) expert testimony establishes "the reliability of the testing procedure employed as approved by the authorities in the field"; and (3) the expert testimony supports the "validity of the tests made on the subject." *Dorsey*, 1975-NMSC-040, ¶¶ 3-4 (internal quotation marks and citation omitted).

{23}    Just a few years later, in 1983, our Supreme Court adopted Rule 11-707, reporting in a memorandum accompanying the issuance of the rule that "[t]he Court's adoption of this rule is in response to complaints and serious problems that we presently have in relation to polygraph testimony in New Mexico," and stating that the Court hoped Rule 11-707 would resolve those problems. *Tafoya*, 1985-NMSC-067, ¶ 16 n.2. If Rule 11-707 did not resolve these problems, the Court indicated it would consider eliminating polygraph expert opinion testimony in New Mexico. *Tafoya*, 1985-NMSC-067, ¶ 16 n.2.

{24}    Our Supreme Court evidently determined that Rule 11-707 was successful in resolving the problems that had arisen with the admission of polygraph evidence because Rule 11-707 remained in place. The Court did not again address polygraph evidence until it was challenged in *Lee v. Martinez*, 2004-NMSC-027, 136 N.M. 166, 96 P.3d 291, following the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and our Supreme Court's decision in *State v. Alberico*, 1993-NMSC-047, 116 N.M. 156, 861 P.2d 192—cases that articulate the standards for admission of scientific expert opinion evidence in the federal courts and in New Mexico courts respectively. Rethinking the standards used earlier for the admission of expert testimony, *Daubert* and *Alberico* focus on the scientific reliability of the evidence and on whether it assists the jury in reaching a decision. *See State v. Torres*, 1999-NMSC-010, ¶ 24, 127 N.M.

13

20, 976 P.2d 20 (explaining that in *Daubert* and *Alberico*, the evidentiary reliability of scientific knowledge replaced "the older, stricter 'general acceptance' standard" (quoting *Daubert*, 509 U.S. at 587-89)).

{25} In *Lee*, our Supreme Court remanded the case to district court for an evidentiary hearing as to the scientific reliability of polygraph evidence to evaluate a witness's truthfulness applying the *Alberico* test. *See Lee*, 2004-NMSC-027, ¶ 2. Upon return of the case to our Supreme Court, the Court extensively reviewed the scientific evidence introduced in the district court to determine whether a qualified polygrapher's opinion on the truthfulness of a witness's testimony is sufficiently scientifically reliable for admission at trial under *Alberico* and Rule 11-702 NMRA (addressing the admissibility of expert testimony). *See Lee*, 2004-NMSC-027, ¶ 1. In concluding that an expert polygrapher's opinion as to the truthfulness of a witness's testimony would continue to be admissible in New Mexico, our Supreme Court held that polygraph examinations were based on scientific principles, which research in the field had found sufficiently reliable to satisfy Rule 11-702. *Lee*, 2004-NMSC-027, ¶ 48. To the extent the scientific evidence revealed some potential problems with the use of polygraph results at trial, the Court turned to its longstanding view that "any doubt about the admissibility of scientific evidence should be resolved in favor of admission," and that "[t]he remedy for the opponent of polygraph evidence is not exclusion; the remedy is cross-examination,

presentation of rebuttal evidence, and argumentation." *Id.* The Court ordered the district courts "to comply with Rule 11-707 in determining whether to admit polygraph examination results," held that Rule 11-707 and our Supreme Court's decision in *Lee* established the reliability of a polygraph examiner's testimony, and that reliability need not be independently reestablished by the district court in each case. 2004-NMSC-027, ¶ 50.

**C.      The Plain Language of Rule 11-707**

{26}      With our Supreme Court's historical focus on the reliability of expert opinion testimony on a witness's truthfulness in mind, we now examine the plain language of Rule 11-707. Rule 11-707, by its terms, establishes the minimum requirements for admission of polygraph examination results. Following a definitional subsection, each subsection of the rule includes an explicit statement explaining that its requirements are addressed to, and are intended to govern, the admission of polygraph examination results at trial. Subsection (B) provides the "[m]inimum qualifications of [a] polygraph examiner," and states that these minimum qualifications must be met prior to administering or interpreting "a polygraph examination *to be admitted as evidence.*" Rule 11-707(B) (emphasis added).

{27}      Rule 11-707(C), one of the subsections relied on by the district court, states:

> C. Admissibility of results. *A polygraph examiner's opinion as to the truthfulness of a person's answers in a polygraph examination may be admitted if*:

(1) the polygraph examination was administered by a qualified polygraph examiner;

(2) the polygraph examination was quantitatively scored in a manner that is generally accepted as reliable by polygraph experts;

(3) the polygraph examiner was informed as to the examinee's background, health, education, and other relevant information prior to conducting the polygraph examination;

(4) at least two (2) relevant questions were asked during the examination;

(5) at least three (3) charts were taken of the examinee; and

(6) the entire examination was recorded in full on an audio or video recording device, including the pretest interview and, if conducted, the post-test interview.

(Emphasis added.) We note that Subsection (C) is explicitly identified as addressing the "[a]dmissibility of [polygraph] results" in its title, and that its text identifies the "results," which are admissible into evidence, as "[a] polygraph examiner's opinion as to the truthfulness of a person's answers in a polygraph examination."

{28} Rule 11-707(D) imposes a pretrial notice requirement on "[a] party who wishes to use polygraph evidence at trial." Subsection (D) states:

D. Notice of examination. A party *who wishes to use polygraph evidence at trial* must provide written notice no less than thirty (30) days before trial or within such other time as the district court may direct. Such notice must include these reports:

(1) a copy of the polygraph examiner's report, if any;

(2) a copy of each chart;

16

(3) a copy of the audio or video recording of the entire examination, including the pretest interview, and, if conducted, the post-test interview; and

(4) a list of any other polygraph examinations taken by the examinee in the matter under question, including the names of all persons administering such examinations, the dates, and the results of the examinations.

(Emphasis added.)

{29} The district court construed Rule 11-707(C) and (D) in this case to require that law enforcement collect the charts and record the entire polygraph examination with an audio or visual recording device and produce copies of the recording and the three charts of the examinee and produce all of this material to Defendant in discovery. We cannot agree with the district court's construction of Rule 11-707's collection and disclosure of evidence requirements to apply to polygraph examinations conducted by law enforcement solely for investigative purposes. The district court's interpretation disregards the plain language of each substantive subsection of the rule limiting the collection and disclosure requirements, and indeed all the requirements of Rule 11-707, to a party who wishes to introduce at trial "[a] polygraph examiner's opinion as to the truthfulness of a person's answers in a polygraph examination." Rule 11-707(C). When we construe a statute, we presume that the Legislature did not use any surplus words. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24, 309 P.3d 1047. "[E]ach word is to be given meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 32, 117 N.M. 346, 871 P.2d 1352.

These principles apply equally to our construction of our Supreme Court's language in a rule. *See Cabral*, 2021-NMCA-051, ¶ 25 ("We interpret our Supreme Court's rules of procedure just as we interpret statutes: by determining the underlying intent of the enacting authority."). We will not assume that our Supreme Court has adopted useless language in a rule, particularly language repeated many times.

{30}    The plain language in Rule 11-707 provides criteria for the admission of expert testimony on truthfulness, and is consistent with the intent of our Supreme Court. The Court has stated that the notice requirements of Rule 11-707(D), which include providing copies of a recording and three charts, are intended "to prevent unfair surprise and to ensure an adequate opportunity to prepare rebuttal" when expert polygraph testimony on truthfulness is introduced at trial. *State v. Gonzales*, 2000-NMSC-028, ¶¶ 21, 30, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. As our Supreme Court stated in *Gonzales*, Rule 11-707(D)'s notice requirements are intended to assist in the preparation of both cross-examination of the polygraph expert and the preparation of rebuttal testimony by the opposing party's polygraph expert. *Gonzales*, 2000-NMSC-028, ¶¶ 21, 30. The testing of the evidence in the adversary process anticipated by our Supreme Court in *Gonzales* is furthered "by ensuring that the opponent receives timely notice that polygraph evidence will be offered, along with copies of the materials prepared by the polygraph examiner prior to and during

18

the examination and an audio or video recording of the examination itself." *Cabral*, 2021-NMCA-051, ¶ 30.

{31}     Finally, we look to Rule 5-501(A)(4), a rule specifically addressing polygraph examinations that are not being offered in evidence. Polygraph examinations were added to the other scientific material generally required to be produced by the state under Rule 5-501(A)(4) around the same time our Supreme Court adopted Rule 11-707. In contrast to Rule 11-707 and its focus on the admission of expert testimony, Rule 5-501 is a general discovery rule that lists disclosures that must be made by the state in all criminal cases. Rule 5-501(A)(4) requires the disclosure of the "results or reports" of all polygraph examinations performed by the state on the defendant or on a witness when those reports are in the "possession, custody or control of the state."[2] It appears from the plain language of Rule 5-501(A)(4) that the rule is intended to distinguish the discovery obligation imposed on the state when polygraph evidence is not offered at trial from the far more extensive requirements of Rule 11-707, when expert polygraph evidence is offered at trial. *See State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 ("In considering the statute's function in relation to related statutes passed by the Legislature, whenever

---

[2]The State provided Defendant a copy of the polygraph examination results and report prepared by Agent McCaskill shortly after the State received the report.

possible we must read different legislative enactments as harmonious instead of as contradicting one another." (text only) (citation omitted)).

{32}    Based on the history of Rule 11-707, its plain language, and the plain language of related Rule 5-501(A)(4), the State is required to conduct the polygraph examination and collect evidence in compliance with Rule 11-707(C) and produce pretrial to a defendant the copies listed in Rule 11-707(D) when it intends to offer *the results of the polygraph examination*—the expert's opinion on truthfulness—into evidence at trial. We conclude that the district court's exercise of its discretion to sanction the State is based on an erroneous construction of Rule 11-707(C) and (D)'s collection and disclosure requirements, and was, therefore, an abuse of the district court's discretion. The State did not violate either the collection or the notice and disclosure requirements of Rule 11-707.

**II.    The State Did Not Have an Obligation to Record the Polygraph Examination or Collect Copies of the Charts Under Rule 5-501(A), Rule 11-106, or Any Court Order**

{33}    Having concluded that Rule 11-707 did not require the State to collect and produce the documents and recordings listed in Rule 11-707(D) when the State did not seek to admit the results of the polygraph examination into evidence, we look briefly at Defendant's claims on appeal that even if Rule 11-707 does not justify the sanction imposed by the district court, violations of Rule 5-501(A), violations of the

district court's May 24, 2022 order, or a violation of Rule 11-106, support the district court's decision to sanction the State.

**{34}** Other than relying on Rule 11-707(C) and (D), the district court did not refer to or cite any other discovery rule or precedent requiring the recording of Defendant's post-examination interrogation, or the collection of the raw data so that it could be disclosed to Defendant. Aside from Rule 11-707, we are not aware of a rule that imposes an obligation on the state to record all questioning of a defendant or to collect the raw data from an investigative polygraph examination. We note that, generally, the State has no duty to collect evidence in its investigation of a crime. *See State v. Ware*, 1994-NMSC-091, ¶ 16, 118 N.M. 319, 881 P.2d 679. NMSA 1978, Section 29-1-16 (2005) encourages law enforcement to record custodial interviews "when reasonably able to do so." Defendant, however, although given *Miranda* warnings, was not in custody. More importantly, Section 29-1-16(I), specifically states, "This section shall not be construed to exclude otherwise admissible evidence in any judicial proceeding." That statute, therefore, does not support the sanctions imposed by the district court.

**{35}** Defendant's contention that the State violated Rule 5-501(A)(4)'s requirement that the State produce any statement made by a defendant was rightly rejected by the district court based on the limitation in that rule to statements "within the possession, custody or control of the state." The court rejected as well

Defendant's request to sanction the State for violation of the court's May 24, 2022 order requiring the State to obtain the polygraph data from the FBI and disclose it to Defendant. The district court acknowledged that the State made diligent efforts to comply and that ultimately compliance was impossible, and sanctioning the State on this basis was, therefore, improper.

{36}  Defendant cited Rule 11-106, the rule of completeness, in his argument to the district court and again on appeal. Defendant, however, offered no explanation in the district court and provides no argument or authority on appeal to explain how a rule of evidence concerning the completeness of a document demands the collection of data from a polygraph examination that is not being offered into evidence. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). [3]

{37}  We therefore conclude that the State did not violate either Rule 11-707, Rule 5-501(A), Rule 11-106, or any court order. The severe sanction imposed by the

---

[3] Defendant also argues for the first time on appeal that the uncollected recording of the polygraph examination and the charts of Defendant's physical response is "material evidence favorable to the defendant," which the State was required to make available to Defendant under Rule 5-501(A)(6) and pursuant to the due process clause of the United States Constitution. *See Brady v. Maryland*, 373 U.S. 83 (1963). Although an appellee may raise an unpreserved issue on appeal for the first time under our "right for any reason" doctrine, we will not consider such an argument where the circumstances make it unfair to the appellant. *State v. Marquez*, 2023-NMSC-029, ¶ 32, 539 P.3d 303. Because a *Brady* argument is highly fact dependent, we do not review this unpreserved issue on appeal.

district court of exclusion of Defendant's statement to law enforcement was not justified.

**CONCLUSION**

{38}    We reverse and remand this case to the district court for further proceedings consistent with this opinion.

{39}    **IT IS SO ORDERED.**


_____
**JANE B. YOHALEM, Judge**


**WE CONCUR:**


_____
**KRISTINA BOGARDUS, Judge**


_____
**ZACHARY A. IVES, Judge**

23